**UNITED STATES DISTRICT COURT**

**DISTRICT OF MAINE**

**MARCEL ALBERT, professionally known as**
**MARC MYSTERIO,**

**Plaintiff,**

**v.**

**AMAZON.COM SERVICES LLC;**
**DISTROKID, LLC; and**
**John Does 1-1000,**

**Defendants.**

Civil Action No. _______________

**VERIFIED COMPLAINT FOR VIOLATIONS OF**
**SECTION 43(a) OF THE LANHAM ACT, 15 U.S.C. § 1125(a),**
**AND 17 U.S.C. § 1202**

**Magistrate Jurisdiction refused**
**Jury Trial Demanded**

Plaintiff Pro Se Marcel Albert, professionally known as Marc Mysterio, a registered author-and-composer pseudonym and music publisher of compositional copyrights, alleges as follows.

## I. NATURE OF THE ACTION

1. This is an action under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A) and (B), and under 17 U.S.C. § 1202. It concerns commercial speech Amazon made in interstate commerce about sound recordings that are derivative works of Plaintiff's musical compositions, and about the Amazon Music service through which those derivative recordings were offered so the compositions could be reproduced and publicly performed.

2. It is not an action for copyright infringement. It does not ask this Court to decide who wrote a melody. It asks this Court to remedy false designation of those derivative recordings as goods in commerce, false advertising of the availability and qualities of those goods and of Amazon's service, and removal and alteration of copyright management information on the same catalog.

3. The Schedule A compositions are the land. The sound recordings are derivative works of that land. Each Amazon play is a public performance and reproduction of the composition effected through a derivative recording. In this pleading those performances are called derivative-recording reproductions and public performances, or DRRM (Compositional Derivative Recording Master, hereinafter referred to as "DRRM") plays. They are not the composition itself. They are how the composition is sold downstream.

4. If there is no water supply, nobody buys a sink or a shower. The composition is the water. The DRRM is the plumbing Amazon put in the house. When Amazon shut the valves and took the name off the tap, the land was still there. The commercial use of the land was not.

5. Plaintiff's commercial interest is the writer and publisher share in the compositions: reproduction, public performance, and the right to prepare and license further derivative works, including new sound recordings and synchronizations. Amazon is not the publisher. DistroKid is not the publisher. They offered the DRRM through which those author rights turn into money.

6. Amazon Music for Artists reported 81,186,170 public performances and reproductions of compositions in Plaintiff's catalog, effected through DRRM offered under Plaintiff's artist page, in the year ending 16 September 2024, together with 14,716,911 listeners.

7. Amazon's own dashboard attributed fifty-five percent of that volume to stations and forty percent to search and browse. Sidney P. Blum, CPA, CFE, CFF, examined the same source categories and read stations at approximately fifty-seven percent.

8. On 20 August 2024 Amazon's live Daily Dance and Electronic chart listed Tomorrow and The Dancefloor (Radio Mix) at Nos. 6 and 7 under the name Marc Mysterio, and listed Everything Is All Wrong on the same chart under that name.

9. Those listings were designations of the DRRM as goods originating from Plaintiff. On 28 August 2024 daily volume of public performances and reproductions was on the order of 748,000. Within days the same reports sat on the floor.

10. United States subscribers, including subscribers in Maine, thereafter received Service Error pages. Alexa returned the works as unavailable. Related-artist stations disappeared. Amazon-defined fans fell from approximately 1.22 million on 30 September 2024 to approximately 3,400 a year later. Superfans fell from 14,685 to on the order of 120. A later historical pull of the same 20 August chart day returns those rows with the artist field blank.

11. The first suppression was selective. On or about 28 December 2023, a DRRM of The Dancefloor re-entered the Billboard Hot Dance/Electronic Songs chart. Public performance and reproduction of that composition were cut. Lesser titles were left comparatively less touched. The catalog-wide cut came after 28 August 2024.

12. In its Answer in Albert v. DistroKid LLC, No. 1:25-cv-01705-KPF (S.D.N.Y.), ECF 60 at 16, ¶ 70, Amazon "admits that it investigated suspicious play counts and playlist visibility for Plaintiff's recordings ... and took steps to mitigate such issues." At a hearing on 8 June 2026 in that action, counsel for Amazon stated that approximately ninety-five percent of Plaintiff's Amazon volume was algorithmic.

13. That statement conflicts with Amazon's own Amazon Music for Artists data of fifty-five percent stations and forty percent search and browse, and with Blum's review of the same categories reading stations at approximately fifty-seven percent on 28 August 2024, which Amazon counsel called Plaintiff's daily "peak."

14. DistroKid employees, knowing titles were being redelivered, manually approved and pushed those deliveries. Plaintiff pleads in the alternative that even if mix-version metadata on a DRRM differed from an earlier delivery, DistroKid ratified the deliveries, Amazon merged identical ISRCs, Amazon charted the named DRRM, and Amazon then stripped identity and withheld public performance and reproduction of the embodied compositions.

15. Lexmark International, Inc. v. Static Control Components, Inc., 572 U.S. 118 (2014), requires a commercial injury in the zone of interests, proximately caused. Lost publisher-side income on suppressed public performances and reproductions of the Schedule A compositions, lost synchronization and cover-licensing value of those compositions, and diminution of catalog value of those author interests are that injury.

**II. PARTIES**

16. Plaintiff is a natural person, a Canadian author and composer, and the administrator of his own publisher interest. He is not a United States national or resident. His professional name Marc Mysterio is a registered pseudonym that branches back to his legal name.

17. His musical compositions are protected in the United States under the Berne Convention and 17 U.S.C. § 104. He is not required to plead a copyright registration or a trademark registration to state a claim under § 1125(a).

18. He administers his publisher interest under designations that include Amerada Music and Tabarnak Tunes. Those designations are field labels for the same person. They are not separate corporate plaintiffs.

19. The international IPI base number that holds those names together is I-002656236-5. SUISA confirmed that base number in writing on 29 and 30 January 2020. That correspondence is Exhibit E.

20. The IP name numbers SUISA listed as Plaintiff's membership numbers include: PA ALBERT MARCEL AJ, 01017 37 00 00; MO ALBERT MARCEL, 00536 24 15 66; MO ALBERT MARCEL, 00805 04 59 59; PP DJ MYSTERIO, 00536 24 19 58; PP JULIE DRAPEAU, 00817 03 59 44; MO KENNEDY KYLE RAY ROBERT FITZPATRICK, 00587 79 28 72; PP KYLE KENNEDY, 01017 36 99 60; PP MARC MYSTERIO, 01017 36 98 62; and PP MYSTERIO MARC, 00573 25 61 45.

21. The names MO KENNEDY KYLE RAY ROBERT FITZPATRICK, 00587 79 28 72, and PP KYLE KENNEDY, 01017 36 99 60, were added in 2009. They have no relation to any person with the legal name Kyle Kennedy.

22. Amerada Music is IPI / CAE 596485293. Tabarnak Tunes is 00864052536. PRS later set up a second Amerada Music Benelux / non-society entity, IPI 786667864, in addition to the SODRAC-member Amerada Music IPI 596485293.

23. Amazon.com Services LLC is a Delaware limited liability company that offers, in interstate and foreign commerce including this District, sound recordings that are derivative works of musical compositions, for reproduction and public performance of those compositions. Its principal place of business is 410 Terry Avenue North, Seattle, Washington 98109. It is authorized to transact business in Maine. Its Maine registered agent is Corporation Service Company, 45 Memorial Circle, Augusta, Maine 04330.

24. DistroKid, LLC is a limited liability company that operates a digital distribution service through which independent rightsholders deliver DRRM to digital service providers, including Amazon. DistroKid generated ISRCs for Plaintiff's deliveries, presented the ingestion interface described below, and employed Creator Services personnel, including Sam Miller and Mike Fink, who manually approved and redelivered those DRRM to Amazon for nationwide exploitation, including to subscribers and users in the District of Maine. DistroKid acted as Amazon's ingestion agent for those deliveries. Amazon offered the resulting DRRM (infra, noted as Compositional Derivative Recording Master) to the public in this District. DistroKid is subject to specific personal jurisdiction here because it delivered those works into this District

through Amazon and because the claims arise out of that delivery. DistroKid's registered agent for service of process, as last shown on the public formation record, is The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

25. John Does 1-1000 are persons and entities whose identities and roles are not yet known with the particularity Plaintiff can certify under Rule 11. Plaintiff alleges only what he can presently prove. The rest is for Rule 26(f) and Rule 16.

**III. JURISDICTION AND VENUE**

26. This Court has subject-matter jurisdiction under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a) and (b), because the claims arise under the Lanham Act and under Title 17.

27. Service and the territorial reach of service are governed by Federal Rule of Civil Procedure 4. Under Rule 4(k)(1)(A), service establishes personal jurisdiction if the defendant is subject to a court of general jurisdiction in Maine. Maine's long-arm statute, 14 M.R.S. § 704-A, is coextensive with the Due Process Clause.

28. These claims arise out of Amazon's offering in this District of DRRM of the Schedule A compositions to Maine subscribers, and out of Amazon's later commercial speech about that same catalog: Service Error, Alexa unavailability, dead stations, and the nameless historical chart of a day when the DRRM had been designated as Plaintiff's goods. Plaintiff does not rest these claims on unrelated warehouse or retail activity in Maine.

29. DistroKid is reached under the same Rule 4(k)(1)(A) and the same claim-specific due process because it delivered those DRRM into Amazon's catalog as ingestion agent, knowing they would be offered for reproduction and public performance of the embodied compositions in Maine and throughout the United States.

30. Amazon transacts business in Maine by offering Amazon Music and Alexa to Maine subscribers and by delivering into that catalog DRRM

of the Schedule A compositions. After the mitigation, Maine users could not obtain public performances or reproductions of those compositions because the DRRM Amazon had offered as live were presented as Service Error and as Alexa-unavailable.

31. DistroKid's course of dealing includes near-weekly emails and manual resubmissions over the year from September 2023 to September 2024. Plaintiff alleges Amazon manifested consent that DistroKid would act as gatekeeper; Amazon had the right to control that conduct, including by directing DistroKid to withhold funds already earmarked for Plaintiff; DistroKid agreed to act in that pipeline; and those facts are objective evidence of the principal's manifestation of consent.

32. Venue is proper under 28 U.S.C. § 1391(b)(2) and (b)(3) because a substantial part of the events giving rise to these claims occurred here - the offering, charting, stationing, voicing, and then withholding of public performances and reproductions of the Schedule A compositions through DRRM served to users in Maine - and because Defendants are subject to personal jurisdiction here.

**IV. THE COMPOSITIONS AND THE SHARES**

33. Schedule A is incorporated here. Plaintiff claims only the writer and publisher percentages listed. He does not claim a co-writer's share. He does not claim one hundred percent of a work whose collecting-society papers show a split.

34. The Dancefloor, also exploited as Tear It Up, is a musical composition co-written by Plaintiff, Tramar Dillard professionally known as Flo Rida, Carlos McKinney, and Tony Scales. Those facts identify the composition. They are not a separate claim. The composition incorporates a sample of Respirator as cleared in 2012 with Warner/Rhino on the master side and Sony/ATV on the publishing side. Sony/ATV took a thirty percent interest in the new composition.

35. The Mechanical Licensing Collective export dated 10 September 2025 lists The Dancefloor - Dirty Dancin' Remix, code TW6WWQ, and The

Dancefloor [DJs From Mars Remix], code TW6W1L. Plaintiff pleads sixty-five percent of the Dirty Dancin' Remix row and thirty-five percent of the DJs From Mars Remix row as those codes stand. Booty on the Floor, code KV96GE, is pleaded at sixty-five percent. Sound recordings issued under those titles are DRRM of the composition. Public performance and reproduction of the composition on Amazon occur through those DRRM.

36. Tomorrow is Plaintiff's composition. MLC codes TW6WW6 and TX02TL list Marcel Albert at one hundred percent. Samantha Fox performed a featured vocal in 2009 under a work-for-hire / side-artist agreement on a DRRM of that composition. She is not a writer of Tomorrow.

37. Promised Land is Plaintiff's sole-authored composition. On 6 May 2014 Brad Roberts of Crash Test Dummies first wrote Plaintiff. On 7 May 2014 Plaintiff emailed Roberts the file titled "Promised Land by Marc Mysterio (demo no mixed)re-edit.mp3." Roberts later sang on a DRRM of that existing composition. He is not alleged as a co-author.

38. On 25 September 2015 forensic musicologist Timothy J. Emmons compared hummed phrases in Promised Land and in MMM MMM MMM MMM and concluded that Promised Land is not an infringement of that work. That report is offered only on originality of the composition as against that comparison. It is Exhibit G.

39. R.W.I. / Roll Wit It is a split with Christopher Kevin Willis. Plaintiff pleads fifty percent unless a specific ISRC locks to an MLC row that reports otherwise.

40. Everything Is All Wrong, also known as All Wrong, is twenty-five percent Plaintiff, twenty-five percent Albert Castillo, and fifty percent Chris Willis. Plaintiff does not plead a one-hundred-percent MLC row.

41. Make Me Feel is a cover: a DRRM of another person's composition. It is not on Schedule A as Plaintiff's musical work. Volume on that mix may evidence catalog-wide treatment of the artist

field. It is not injury to a composition Plaintiff owns.

42. "Marc Mysterio" and "Marcel Albert" are the same claimant. Amerada Music and Tabarnak Tunes are publisher designations for that same person.

**V. THE SERVICE AMAZON ADVERTISES**

43. Amazon Music is sold as a catalog in which identified DRRM can be searched, browsed, added to libraries, placed on official and algorithmic stations, requested by voice through Alexa, and reported through Amazon Music for Artists, so the embodied compositions may be reproduced and publicly performed.

44. Amazon Music for Artists displays total volume of those public performances and reproductions, listener counts, and a breakdown among stations, Amazon playlists, user libraries, and search and browse. It displays a live artist page.

45. On 18 April 2024, Mark Austria, Catalog Specialist at Amazon Music, wrote that optimizations had been processed and that "Play new music by Marc Mysterio" and "Play the latest/new song by Marc Mysterio" returned success. Amazon treated the artist identity as attachable at the voice layer through which public performances of the compositions are requested. There was no accusation of fraud.

46. Amazon's partner-facing rules include suppression of identical tracks repackaged under altered metadata. DistroKid received that class of rule. DistroKid nevertheless manually overrode duplicate blocks and pushed mix-version edits of DRRM. Amazon's backend merges identical ISRCs into a single audio group.

**VI. VOLUME, CHART, FIRST CUT, AND CATALOG CUT**

47. For 17 September 2023 through 16 September 2024, Amazon Music for Artists reported 81,186,170 public performances and reproductions of compositions in the catalog, effected through DRRM offered under Plaintiff's artist page. The source mix was stations fifty-five

percent, search and browse forty percent, Amazon playlists four percent, user libraries one percent.

48. Those approximately 81 million public performances and reproductions already occurred. They are the installed base, not the loss. The loss begins when public performance and reproduction are withheld.

49. On 20 August 2024 Plaintiff observed Amazon's live Daily Dance and Electronic chart listing Tomorrow (Is Another Day) at No. 6 and The Dancefloor (Radio Mix) at No. 7, each under the artist name Marc Mysterio.

50. Those rows designated the DRRM as goods originating from Plaintiff. A later historical pull of that same chart day through The Orchard's Amazon insights returns those rows with the artist field as a hyphen or null, while adjacent rows for other artists still display a name. That pull is Exhibit F.

51. The Orchard chart is a view of Amazon's historical top songs charts, updated daily by API. Amazon first offered those DRRM as Plaintiff's charted goods and thereafter published a historical version of that marketplace day in which the source name had been removed.

52. A DRRM of The Dancefloor entered the Billboard Hot Dance/Electronic Songs chart and later re-entered that chart. On or about 28 December 2023, that re-entry coincided with the first withholding of public performance and reproduction of that composition on Amazon Music. Amazon cut the title that had returned to the Billboard dance chart and left lesser-performing DRRM comparatively less touched.

53. The catalog-wide cut occurred after 28 August 2024. On 28 August 2024 aggregate daily volume was approximately 748,000. By 29-31 August the same reports sat on the floor.

54. Fan counts on the artist page did not vanish in lockstep. Public performance and reproduction of the Schedule A compositions

through those DRRM did.

55. Derivative recordings of the Schedule A compositions have been publicly performed and reproduced on Amazon Music to subscribers in Maine, throughout the United States, and abroad. After the mitigation, Maine users encountered the same Service Error, Alexa unavailability, and loss of station and search performance.

**VII. DISTROKID'S DEFAULT AND THE MANUAL PUSH**

56. On DistroKid's submission screen, the control asking whether the single had been previously released is a non-mandatory field. The radio button pre-selects "No."

57. A user who walks the screen without changing that button transmits DistroKid's default, not an affirmative statement that the DRRM has never existed in commerce. Blum's sworn declaration, Exhibit I include a screenshot of that default.

58. From August 2023 through September 2024, DistroKid's Sam Miller and Mike Fink sent Plaintiff same-day approvals, insertions into digital service providers, AI-rejection overrides, and Amazon-specific resubmissions of DRRM.

59. DistroKid's upload panel includes songwriter first-name and last-name fields. It does not include a publisher field for each writer. DistroKid pushed the DRRM into Amazon's catalog knowing that missing publisher CMI would mismatch writers and publishers. It remains so.

60. DistroKid's counsel told the Southern District that DistroKid assigns ISRCs by MD5 hash of the audio file, that a retitled upload of the same bits receives the same ISRC, and that "the title of the sound recording is irrelevant." Albert v. DistroKid LLC, No. 1:25-cv-01705-KPF (S.D.N.Y.), ECF 22 at 2.

61. Counsel wrote that DistroKid's hash "determined that Plaintiff's recordings were the same as his prior recordings, so

DistroKid generated the same International Standard Recording Code ('ISRC') for each of the at-issue sound recordings," and that "the fact that DistroKid's system produced the same MD5 hash means that Plaintiff did not actually upload remixes or remastered versions." Id.

62. Amazon's Answer stated it "received repeated uploads via DistroKid of purportedly new 'mix' versions of Plaintiff's recordings that in fact had the same ISRCs, content, and title as Plaintiff's previously submitted recordings, but with various versions of 'mix' or other version indicators appended to the track name." ECF 60 at 15, ¶ 69. On the next page Amazon "admits that it investigated suspicious play counts and playlist visibility for Plaintiff's recordings ... and took steps to mitigate such issues." ECF 60 at 16, ¶ 70.

63. DistroKid had already coded the audio as the same recording. Amazon then mitigated playlist visibility of those same-ISRC deliveries.

64. Amazon did not apply that treatment when Warner Music resubmitted David Guetta's I'm Good (Blue) more than two thousand times. That comparison is industry practice, not a claim against Warner, Guetta, or Bebe Rexha.

**VIII. AUTHOR RIGHTS AND WHY THE DRRM MATTERS**

65. A musical composition earns when it is reproduced, when it is publicly performed, when it is synchronized with moving images, and when new derivative sound recordings of it are licensed. Credit under the writer's commercial name is how the trade finds the work.

66. Amazon offered the DRRM through which those exclusive rights are exploited on its service. When Amazon stripped name, stations, voice, and volume from those DRRM, every market for the compositions got quieter.

67. The people on a particular Amazon file - featured vocalists, producers, engineers - are DRRM participants. They are not the composition. They do not have to consent for the publisher to license

a one-to-one dummy of the composition to a picture or a brand. The writers and publishers get paid on that license. The Amazon file is cut out of the deal.

68. The Mechanical Licensing Collective publicly lists digital mechanical rates. The publisher-side figure commonly applied is on the order of $0.0012 per public performance and reproduction. Plaintiff has not received a penny from the MLC on the Amazon DRRM at issue, despite approximately 81 million public performances and reproductions in the year ending 16 September 2024.

69. In 2016 ESPN / The Walt Disney Company licensed a DRRM of Plaintiff's composition for synchronization and public performance on First Take. ESPN Music's 1 March 2017 "First Take Flow" post listed Marc Mysterio feat. J Rice among that month's featured artists. The licensed on-air use was exploitation of the composition.

70. A music supervisor who hits play and gets Service Error cannot hear the composition. That is not a closed cookie jar. That is a kitchen with the water shut off.

**IX. PROMISED LAND, EMMONS, AND UMPG**

71. Promised Land is one hundred percent Plaintiff's compositional copyright. The released DRRM is a duet with Brad Roberts. Mark Crozer is on that same recording.

72. In 2015 Universal Music Publishing Group lawyers telephoned Plaintiff and said the hummed line on Promised Land was the chorus of MMM MMM MMM MMM and to cease and desist.

73. Plaintiff told them they were wrong. He retained Timothy J. Emmons. Emmons is a Los Angeles bassist whose forensic work includes more than three dozen copyright matters and film-score prior-art research. His comparison report is Exhibit G. His CV is Exhibit H.

74. On 25 September 2015 Emmons concluded Promised Land is not an infringement of MMM MMM MMM MMM and is not a copy of that work in any

substantially similar way.

75. On 2 October 2015 UMPG wrote that it "is in agreement that Brad merely laid vocals down on the track and that you wrote the composition."

**X. BLUM'S LETTER, REPORTS, AND DECLARATION**

76. Sidney P. Blum, CPA, CFE, CFF, is a forensic accountant and royalty auditor who has testified on Lanham Act, copyright, trademark, and licensing damages. His entertainment work has included royalty and damages matters involving Sony, Universal Music Group, Warner Music Group, Disney, and individual clients including Justin Bieber. His CV is Exhibit A. His reports are Exhibit B. His 18 May 2026 letter is Exhibit C.

77. Blum also executed a sworn declaration. That declaration authenticates the Amazon Music for Artists exports, attaches the DistroKid submission-screen screenshot with the pre-selected "No" radio button, and was used, among other places, on a procedural motion in the Second Circuit. It is Exhibit I. The CV, the reports, the 18 May 2026 letter, and the declaration are four papers. They are not one paper.

78. Blum used authenticated exports from Amazon Music for Artists. For every twenty-four-hour period those files show how many times a DRRM was performed that day, and how many of those performances came from unique listeners.

79. A performance is one play: one public performance and one reproduction of the composition through the DRRM. A unique listener is one person. Ten plays by one person are ten performances and one unique listener.

80. Blum identified a pre-decline peak of 748,255 performances in a single day, observed 23 August 2024, against approximately 404,000 unique listeners that same day.

81. The but-for question is not what if a new hit appeared. It is what if 29 August 2024 had looked like the Tuesdays before it, and the Tuesdays after it, for two years.

82. If every one of 730 days stayed frozen at 748,255, the pile would already be about 546 million performances. That is Blum's floor.

83. The files showed a gentle climb before the cutoff. Blum wrote that climb as a daily growth factor of 0.15 percent. For every 1,000 performances today, tomorrow is 1,001 and a half. That is a leaky faucet, not a hockey stick.

84. Blum's base case states the two-year pile as approximately 2.06 billion but-for performances and approximately 1.11 billion listener-days. Using the June 2024 Orchard statement rate of $0.007605 per performance, 2.06 billion times that rate is approximately $15.7 million. That figure is recording-side streaming income as reported. It is offered as a measure of withheld commercialization of the compositions through DRRM, not as a separate master-recording count.

85. Sensitivity bands at $0.0070 and $0.0088 produce about $14.4 million to $17.9 million. One harvest, priced three ways.

86. Rising unique listeners are the pool a music supervisor looks at. A catalog that goes dark on Amazon's application is not that pool.

**XI. THE 2015-2016 DUPLICATE CLAIMS ON AMERADA MUSIC**

87. Plaintiff incorporates the 13 October 2015 email of James Way of PRS for Music and the 23 February 2016 email of Ingrid Stromback of ICE Services as Exhibit D.

88. Those communications concern a catalogue-wide publishing conflict over works registered to Amerada Music.

89. PRS wrote that "[w]ork registration claims are accepted from members in good faith and when conflicting claims are identified we invoke the Rules governing Disputes and Duplicate Claims 2015."

90. PRS wrote: "In this instance all parties were asked to support their claims at the same time as the matter related to a catalogue of works (see Rule 3.10)."

91. From Plaintiff, PRS required a "Statutory Declaration to cover that you have not assigned your works to Supreme Songs or Downtown Music - Rule 6.4."

92. Plaintiff submitted that statutory declaration. He declared that he had not assigned the works to Supreme Songs or Downtown Music.

93. From Supreme Songs and Downtown Music, PRS required the "writer (you) to original publisher (Amerada Music) agreement covering an assignment of your works to the Amerada Music that Supreme Songs (via their agreement with Superb Songs) and Downtown Music signed a sub-publishing agreement with - Rule 6.2.1.1."

94. PRS then wrote: "As you are aware, Supreme Songs and Downtown Music did not provide the relevant support documentation and therefore their claims were removed from your Amerada Music works and writers."

95. PRS further wrote: "we have now set up a second seperate Amerada Music Benelux entity (IPI 786667864) in addition to the SODRAC member (your Amerada Music - IPI 596485293)."

96. On 23 February 2016 Ingrid Stromback wrote: "I've re-investigated this problem and I've found the error that was made."

97. She wrote that "the contract claims of Supreme Songs and Downtown Music was indeed moved to the non-society IP Amerada Music (IPI 786667864) and the works by your writers-IP were moved to a separate agreement that remained on the SODRAC member Amerada Music (IPI 596485293)."

98. She wrote: "All this was done on information supplied from PRS."

99. She wrote: "Unfortunately due to a misunderstanding, the agreement between Downtown Music and Supreme Songs was at a later date moved back to Amerada Music (IPI 596485293)."

100. She wrote: "Since your songs were moved to a different agreement this shouldn't have affected them, BUT Downtown sent in new registrations for these works on their agreement, which lead to that some works were merged back to the wrong agreement."

101. That is the second wave. The first claims had already been removed for want of documents. Downtown then sent in new registrations. ICE merged works back to the wrong agreement.

102. ICE then "moved the agreement with the conflict back to the non-society IP Amerada Music (IPI 786667864), and moved all works by your writers to a separate agreement (ICE # 00006710889)."

103. ICE warned: "if Downtown or Supreme Songs register these works again, their claim will be added to the work since there are no claim of an ICE member on these works now."

104. ICE closed: "Again I would like to apologize for the mistake made by ICE and the confusing information that has been coming from us the recent days."

105. The CMI for this catalog - who the writer is, who the publisher is, which IPI holds the claim, which agreement the work sits on - was moved, split, merged, and left open to a third attachment.

106. Plaintiff alleges those successive unsupported claims were fraudulent in that they were advanced and then re-advanced without the writer-to-publisher assignment PRS demanded and never received.

107. Plaintiff alleges a nexus to the case at bar. The same catalog, the same Amerada Music IPI 596485293, the same writer identifiers, and the same risk that a later commercial actor will treat a conflicted or rewritten claim as clean chain of title.

108. Discovery is necessary to determine whether any registration, metadata field, ISRC, publisher line, artist line, or service display at issue traces to the Supreme Songs / Downtown Music claims, the IPI 786667864 split, the merge-back onto IPI 596485293, ICE agreement 00006710889, or a later re-registration of the kind ICE itself said would attach.

**XII. COUNT I - FALSE DESIGNATION OF ORIGIN**
**15 U.S.C. § 1125(a)(1)(A)**

109. Plaintiff realleges paragraphs 1 through 108.

110. Amazon used in commerce words, names, and false or misleading descriptions of fact in connection with DRRM of the Schedule A compositions.

111. Amazon offered those DRRM under the name Marc Mysterio on a live chart and on a live artist page. A chart row is commercial speech about a good in the store. The title is the SKU. The artist field is the name on the supermarket aisle hanger product list.

112. On 20 August 2024 the live page put Marc Mysterio on that supermarket aisle hanger product list. The later Orchard pull of that same Tuesday is Amazon's own catalog speaking again about the same SKUs, only the name on the supermarket aisle hanger product list is gone while the supermarket aisle hanger product lists next to it still have names.

113. A hyphen where the name was is false designation of the DRRM as a good in commerce. Credit under that name is how a supervisor, a publisher, a station, and a voice request find the composition.

114. Amazon presented the same DRRM to subscribers, including subscribers in Maine, as Service Error and to Alexa users as unavailable.

115. Confusion about those goods is confusion about whether the embodied compositions can be reproduced and publicly performed on the

service.

116. DistroKid contributed to the designation that reached Amazon by transmitting default flags and mix-version strings it had manually approved. Amazon is the speaker of the storefront, the chart, the voice layer, and the historical feed.

117. Plaintiff has been damaged in the writer and publisher value of the Schedule A compositions.

**XIII. COUNT II - FALSE ADVERTISING**
**15 U.S.C. § 1125(a)(1)(B)**

118. Plaintiff realleges paragraphs 1 through 117.

119. Amazon advertised Amazon Music as a searchable, stationable, voice-ready catalog of identified recordings through which embodied compositions are reproduced and publicly performed.

120. After charting the DRRM under Plaintiff's name and after Mark Austria confirmed that Alexa requests for new music by Marc Mysterio returned success, Amazon presented the same catalog as Service Error, Alexa-unavailable, unstationed, and, on the historical chart, unnamed.

121. Those statements misrepresented the nature, characteristics, and qualities of the goods and of the service.

122. The misrepresentations were made in commercial advertising and promotion, in interstate commerce, and they deceived or had the tendency to deceive a substantial segment of the audience, including Maine subscribers and music supervisors who use the service to hear a composition.

123. Plaintiff has been damaged in lost publisher-side income, lost and impaired synchronization value, lost licensing value for new DRRM, and diminution of catalog value.

## XIV. COUNT III - COPYRIGHT MANAGEMENT INFORMATION 17 U.S.C. § 1202

124. Plaintiff realleges paragraphs 1 through 123.

125. Copyright management information for the Schedule A compositions includes the name of the author, the name of the copyright owner, the title, the IPI and publisher designations, and identifying numbers and symbols conveyed in connection with copies or performances of the works.

126. DistroKid's ingestion interface omitted a publisher field for each writer. DistroKid generated and regenerated ISRCs. Amazon merged identical ISRCs, stripped the artist field on the historical chart of a day the DRRM had been named, and served Service Error and Alexa-unavailable in place of identified performances.

127. The 2015-2016 PRS and ICE file shows the same catalog's CMI already treated as movable: claims removed for want of documents, a second Amerada IPI created, an agreement moved back by misunderstanding, new registrations merged to the wrong agreement, and an open invitation for the next registration to attach.

128. Plaintiff alleges Defendants, without authority, removed and altered CMI, and distributed and performed works knowing CMI had been removed or altered, with reasonable grounds to know that it would induce, enable, facilitate, or conceal infringement of the right to control how the compositions are identified and commercialized.

129. Count III is not a substitute copyright-infringement count. It is the CMI claim that matches the hyphen on the chart, the missing publisher field, the merged ISRC, and the ICE mis-merge.

130. Discovery is necessary to map each altered field to each Schedule A composition.

## XV. ALTERNATIVE PLEADING

131. Plaintiff pleads in the alternative that DistroKid acted as Amazon's ingestion agent; that DistroKid acted independently in transmitting defaults and mix-version strings; and that Amazon ratified the deliveries by charting them, paying toward them, and then mitigating them.

132. Plaintiff does not waive any claim by pleading agency and ratification together.

**XVI. CONCLUSION**

133. Plaintiff is a victim of his own success.

134. Amazon put the catalog on the shelf. DistroKid walked it through the door. For a year the DRRM of the Schedule A compositions played in the tens of millions. Maine subscribers could ask Alexa for them. The live chart put Marc Mysterio on the supermarket aisle hanger product list. Then Amazon called that volume suspicious, DistroKid stayed quiet in the pipeline, and the same tap that had been running came back Service Error, Alexa-unavailable, unstationed, and, on the historical chart of the day the goods had been named, a hyphen where the name had been.

135. Fame is not money. Money is not happiness. That is not a slogan. It is what a jury can see on this record: a working writer and publisher whose compositions were commercialized through Amazon's store and DistroKid's feed, who watched Amazon designate the DRRM as his goods and then take the name off the goods, who watched DistroKid approve the deliveries and omit the publisher field, and who watched the water supply sit in the ground while the house Amazon built around it went dry.

136. The PRS statutory declaration and the ICE merge are not the claim against these Defendants. They are how this catalog's CMI had already been treated as movable before Amazon and DistroKid laid their own hands on the same identifiers. The claim at bar is what those two did with the designations, the service, and the CMI once the compositions were in their commerce.

137. This complaint is the counterpunch against Amazon and DistroKid. It cannot give back the years, the stalled licenses, or the quiet that follows a hit other people spent. It can put Amazon's false designations and false service claims, DistroKid's feed of altered and incomplete CMI, and the withheld public performance and reproduction of the Schedule A compositions on a verdict form and ask for what the law still allows to be recovered.

**XVII. PRAYER FOR RELIEF**

Plaintiff respectfully requests that this Court:

A. Enter judgment that Defendants violated 15 U.S.C. § 1125(a)(1)(A) and (B) and 17 U.S.C. § 1202;

B. Enjoin Amazon from offering DRRM of the Schedule A compositions under false or missing designations, and from advertising those DRRM or the Amazon Music service as available, stationable, or voice-ready when they are not;

C. Award Plaintiff actual damages measured by lost publisher-side income on withheld public performances and reproductions of the Schedule A compositions from 28 December 2023 forward on The Dancefloor and from 29 August 2024 forward on the remainder of Schedule A; lost and impaired synchronization value of those compositions; lost and impaired value of licenses for new DRRM of those compositions; and diminution of catalog value of those author interests; together with Defendants' profits subject to equity;

D. Award statutory damages under 17 U.S.C. § 1203 to the extent the CMI claim is tried to that measure;

E. Award costs and such other relief as is just;

F. Grant a jury trial on all issues so triable.

SCHEDULE A

Musical compositions (writer / publisher share pleaded):

The Dancefloor - Dirty Dancin' Remix - TW6WWQ - 65%

The Dancefloor [DJs From Mars Remix] - TW6W1L - 65%

Booty on the Floor - KV96GE - 65%

Tomorrow - Remix Edit - TW6WW6 - 100%

Tomorrow - RMX - TX02TL - 100%

Promised Land - Albert / Tabarnak - 100%

R.W.I. / Roll Wit It - 50% with Chris Willis

Everything Is All Wrong / All Wrong - 25%

Writers of The Dancefloor as listed by the MLC include Carlos McKinney, Plaintiff Marcel Albert, Tony Scales, and Tramar Dillard. Plaintiff pleads sixty-five percent of the Dirty Dancin' Remix row and thirty-five percent of the DJs From Mars Remix row as those codes stand.

Respectfully submitted,

***/S/ MARCEL ALBERT***

Marcel Albert
p/k/a Marc Mysterio
Plaintiff, pro se
Rue 288 Grosvenor
Westmount, QC, Canada H3K 2M6
marcel.albert.ecf@gmail.com

(617) 341-9500

VERIFICATION

I, Marcel Albert, professionally known as Marc Mysterio, declare under penalty of perjury under the laws of the United States of America, pursuant to 28 U.S.C. § 1746, that I have read the foregoing Verified Complaint and that the factual allegations are true and correct to the best of my knowledge, information, and belief.

Executed on ***SEPTEMBER 25***, 2026.

***/S/ MARCEL ALBERT***

Marcel Albert
p/k/a Marc Mysterio

**XVIII. EXHIBIT LIST**

Exhibit A. Curriculum vitae of Sidney P. Blum, CPA, CFE, CFF.

Exhibit B. Blum forensic / preliminary reports.

Exhibit C. Blum letter dated 18 May 2026.

Exhibit D. PRS email of James Way, 13 October 2015, and ICE email of Ingrid Stromback, 23 February 2016.

Exhibit E. SUISA / SODRAC IPI correspondence, 29-30 January 2020, Sabrina Busse to Plaintiff.

Exhibit F. The Orchard Amazon historical chart pull of the 20 August 2024 Daily Dance and Electronic chart day.

Exhibit G. Timothy J. Emmons forensic comparison, 25 September 2015, Promised Land against MMM MMM MMM MMM.

Exhibit H. Curriculum vitae of Timothy J. Emmons.

Exhibit I. Sworn declaration of Sidney P. Blum, CPA, CFE, CFF, with exhibits thereto, including the DistroKid default-radio screenshot and the authenticated Amazon Music for Artists exports referenced in Exhibits B and C.